J-S60024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF: D.E.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.B.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 958 MDA 2018 |

Appeal from the Order Entered May 4, 2018
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
6 of 2018

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY NICHOLS, J.:                **FILED NOVEMBER 06, 2018**

K.B.C. (Mother) appeals from the order granting the petition of F.J.W. (Stepmother) and terminating Mother's parental rights to D.E.C. (Child) (born February of 2015), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).  We affirm.

In July of 2015, F.J.M. (Father) filed a petition for emergency custody of Child, following Mother's incarceration.[1]  **See** Ex. P-2 to Termination Hr'g, 5/3/18.  On July 6, 2015, the trial court granted Father's petition and gave him primary physical custody of Child.  **Id.**  Following a hearing, on August 14, 2015, Father was granted primary physical custody of Child and Mother

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The record does not contain the reason for Mother's incarceration in July of 2015.

was granted partial physical custody.[2]  *See* Ex. P-3 to Termination Hr'g, 5/3/18.  The trial court granted Father and Mother shared legal custody.  *Id.*  Since August of 2015, Child has been in the physical custody of Father and Stepmother.  *See* N.T., 5/3/18, at 6.  Mother was incarcerated again in February of 2016.  *See id.* at 10.  On July 6, 2017, the trial court sentenced Mother to twenty-one to forty-two months of incarceration following a revocation of probation.  *See* Ex. P-4 to Termination Hr'g, 5/3/18.

On February 5, 2018, Stepmother filed a petition seeking to involuntarily terminate Mother's parental rights, so that Stepmother could adopt Child.  The trial court appointed counsel to represent Mother and a guardian *ad litem* (GAL) to represent Child.[3]  On May 3, 2018, the trial court held a hearing on the termination petition.  Mother's counsel was present at the hearing, but Mother did not attend.  *See* N.T., 5/3/18, at 3.  The day prior to the hearing, Mother had contacted court administration to state there was "a chance she

_____

[2] Mother's partial custody consisted of two days a week, for a period of eight hours, with no overnight visits.  *See* Ex. P-3 to Termination Hr'g, 5/3/18.

[3] We briefly address Child's right to counsel.  *See In re K.J.H.*, 180 A.3d 411, 412-14 (Pa. Super. 2018).  The Pennsylvania Supreme Court has held that legal counsel must be appointed to represent a child's interests in a contested termination proceeding.  *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (plurality).  However, where a child is too young to express a preference, there can be no conflict between the child's legal and best interests, and the GAL may also serve as the child's counsel.  *See In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018).  Here, Child was approximately three years old at the time of the hearing, and there was no indication that she was able to express a preference in the outcome of the termination hearing.  Therefore, we need not remand for appointment of separate counsel.  *See id.*

wouldn't make it today[,]" but she "[d]idn't really give any reason" for her absence. *Id.* Counsel requested a continuance, which the trial court denied. *Id.* at 3-4.

At the hearing, Stepmother testified she has been involved in Child's life since Child was four months old. *Id.* at 5-6. She stated that she has lived with Father since Child was born, and that they married in September of 2017. *Id.* at 6. Child refers to Stepmother as "mommy," and does not know that Stepmother is not her biological mother. *Id.* at 3. Stepmother continued that she loves Child as though she was her own. *Id.* at 13. Stepmother has family in the area, including her parents, whom Child calls "Meem" and "Pappy." *Id.* at 13. Additionally, Stepmother stated that she and Father have custody of two other minor children, ages six and eleven, whom Child considers as siblings.[4] *Id.* at 6-7.

Stepmother further testified regarding Mother's lack of contact and involvement with Child. *Id.* at 8, 10-12. Between August of 2015 and February of 2016, Mother attended eleven out of a potential fifty-eight visits with Child. *Id.* at 10. For many of the visits Mother attended, she did not exercise the full eight hours allowed. *Id.* at 11. Father and Stepmother were flexible with visiting time and never denied Mother a visit. *Id.* at 10. Mother's last visit with Child was November 13, 2015, and Mother did not request any visits while incarcerated. *Id.* at 8, 16.

---

[4] The eleven-year-old child is Stepmother's nephew, and the six-year-old child is Father's biological child with a different mother. *Id.* at 7.

- 3 -

Between losing primary custody of Child in July of 2015 and the hearing in May of 2018, Mother did not write or call Child, despite having Father's phone number and address. *Id.* at 12. Mother sent one letter and one birthday card to Child, both after the termination petition was filed. *Id.* at 11. Mother has never provided financial support for Child. *Id.* at 12.

Father testified at the hearing regarding the loving bond between Stepmother and Child, whom he described as "a mama's girl." *Id.* at 17. Father stated that Child would not recognize Mother as her mother. *Id.* at 18.

At the conclusion of the hearing, the trial court found that Stepmother proved by clear and convincing evidence that Mother's rights should be terminated under Sections 2511(a)(1) and (2), and that it was in Child's best interests for Mother's rights to be terminated pursuant to Section 2511(b). *Id.* at 21-22.

Mother filed a timely notice of appeal and Pa.R.A.P. 1925(b) statement. Mother raises the following issues on appeal:

> 1. Whether [Mother] has evidenced a settled purpose of relinquishing parental claim to the minor child or failed to perform parental duties[.]
>
> 2. Whether [Mother] will be able to remedy the conditions causing her current incapacity[.]

*See* Mother's Brief at 3.

Mother argues that the trial court erred in terminating her parental rights under Section 2511(a)(1) because she was not intentionally absent

- 4 -

from Child's life. ***See id.*** at 6-7. She claims that "[h]er incarceration created an overwhelming obstacle to her performance of parental duties." ***Id.*** at 7.

Mother also argues that the trial court erred in terminating her parental rights under Section 2511(a)(2) because it failed to consider her ability to remedy the situation. ***Id.*** a 7-8. She contends that although she was in boot camp at the time the petition was filed, on the date of the hearing she had been transitioned to a halfway house. ***Id.*** at 8. She continues that the next step was parole and that, upon completion, she "will have completed a treatment plan and established steady employment." ***Id.*** She would then be in a position to become a consistent and stable resource for Child. ***Id.*** Therefore, Mother argues, she can "remedy the causes of her incapacity within the next twelve (12) months." ***Id.***

Lastly, while acknowledging that no evidence was presented to show a bond between her and Child, Mother claims that her ability to remedy the causes of her incapacity present an "opportunity" to form a bond with Child. ***Id.*** She adds that at Child's young age, Child's "developmental, physical[,] and emotional needs would not be harmed by allowing [M]other more time to become a reliable and providing parent." ***Id.*** at 8-9.

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Additionally,

we are instructed that we may not consider any effort by the parent to remedy the conditions described in subsections (a)(1), (a)(6) or (a)(8) if that remedy was initiated after the parent was given notice that the termination petition had been filed. Further, this evidentiary limitation applies to the entire termination analysis. The court, however, may consider post-petition efforts if the efforts were initiated before the filing of the termination petition and continued after the petition date.

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations and quotation marks omitted).

The relevant sections of 23 Pa.C.S. § 2511 provide that:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

    (1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

    (2)    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.  To affirm the trial court, we need only agree with any one of the subsections of 2511(a), as well as subsection (b).  **_See In re B.L.W._**, 843 A.2d 380, 384 (Pa. Super. 2004) (_en banc_).

With respect to Section 2511(a)(1), our Supreme Court has held,

[o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his

or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998)

(citations omitted). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

Here, the evidence established that from the time Father gained custody of Child, Mother visited only eleven times out of fifty-eight, and did not stay for the full eight-hour allotment of time. *See* N.T., 5/3/18, at 10-11. The last time Mother physically visited with Child was November 13, 2015. *Id.* at 8. Mother did not request visits during her incarceration, and her only contact with Child consisted of one letter and one birthday card, both sent after the termination petition was filed. *Id.* at 11-12, 16. Testimony established that Child would not recognize Mother as her biological mother. *Id.* at 18. Mother, who did not attend the hearing and offered no explanation for her absence despite her counsel's efforts to contact her, did not offer any explanation for her conduct with respect to Child. *Id.* at 3-4.

Further, Mother's argument regarding her incarceration is unavailing. In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), the Supreme Court held

- 8 -

that incarceration is not a "litmus test for termination," but can be determinative of "whether a parent is incapable of providing 'essential parental care, control[,] or subsistence' and the length of the remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent[.]'" *S.P.*, 47 A.3d at 830 (citation omitted). Moreover, the Supreme Court in *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975), explained that "we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command." *McCray*, 331 A.2d at 655; *accord S.P.*, 47 A.3d at 828.

Here, while incarcerated, Mother made no efforts to remain in contact with Child. *See McCray*, 331 A.2d at 655. Mother did not request visits with Child while incarcerated. N.T, 5/3/18, at 16, 19. She did not call and ask to speak to Child, although she had Father's phone number. *Id.* at 12, 17. She contacted Child by mail only twice from November 2015 through the May 2018 hearing, and as such contact occurred after the termination petition was filed, we may not consider it. *See S.P.*, 47 A.3d at 828; *Z.P.*, 994 A.2d at 1121.

Accordingly, the trial court appropriately determined that Mother's parental rights could be terminated pursuant to Section 2511(a)(1), as she had failed to perform her parental duties for a period of at least six months. N.T, 5/3/18, at 21-22; Order, 3/4/18. We conclude that the trial court's

decision is supported by the record and the relevant law. *See In re K.Z.S.*, 946 A.2d 753, 756-57 (Pa. Super. 2008).

Regarding Section 2511(a)(2), this Court has stated that

[t]he grounds for termination of parental rights under Section 2511(a)(2) . . . are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties. Nevertheless, parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.

*Id.* at 758 (citation omitted).

Moreover, the fundamental test is that petitioner must prove: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *Id.* (citation omitted).

Instantly, the evidence established that although Mother was granted partial physical custody, she only exercised eleven out of fifty-eight visits with Child. *See* N.T., 5/3/18, at 10-11. Father and Stepmother were flexible with accommodating Mother's visits, but Mother last visited child in November of 2015. *Id.* at 8, 10. Further, Mother has never provided financial support for Child. *Id.* at 12. Mother has been repeatedly incarcerated throughout Child's life and, during her incarceration, she has not sought to contact Child. *Id.* at

12, 16. Mother's vow to "remedy the causes of her incapacity within the next twelve (12) months" was properly rejected by the trial court. ***K.Z.S.***, 946 A.2d at 758.

Therefore, we agree with the trial court's finding that Mother's continued incapacity caused Child to be without essential parental care, control, and subsistence, and that the causes of Mother's incapacity could not or would not be remedied pursuant to Section 2511(a)(2). ***See*** Trial Ct. Op., 5/4/18, at 12; N.T., 5/3/18, at 21.

Next, we turn to the second part of the analysis—a determination of Child's needs and welfare under the best interest of the Child standard. ***See L.M.***, 923 A.2d at 511; 23 Pa.C.S. § 2511(b). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***Z.P.***, 994 A.2d at 1121 (citation omitted). We have also noted that

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the *intangible* dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

***Id.*** (citing ***In re C.S.***, 761 A.2d 1197, 1202 (Pa. Super. 2000)). Ultimately, the concern is the needs and welfare of a child. ***Id.***

The trial court is not required to use expert testimony regarding the existence and nature of a child's bond with a parent, and social workers and caseworkers may offer their evaluations and observations. *See L.M.*, 923 A.2d at 511. "[W]here there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *K.Z.S.*, 946 A.2d at 762-63.

Here, Mother acknowledges that no evidence was introduced to show a bond between Mother and Child. Mother's Brief at 8. On the contrary, the evidence established that there was no bond. *See* N.T., 5/3/18, at 13, 17-18. Child has not been in Mother's custody since July 6, 2015, and the last time Mother saw Child was on November 13, 2015, when Child was approximately nine months old. *See id.* at 8, 9; Ex. P-2 to Termination Hr'g, 5/3/18. Mother did not write, call, send cards or gifts, or request visits while incarcerated.[5] N.T., 5/3/18, at 11-12. There was testimony that Child would not recognize Mother if she saw her, and that Child refers to Stepmother as "Mommy." *Id.* at 17-18.

Moreover, Mother's argument that there should be an "opportunity" to form a bond with Child and that Child will not be harmed by waiting for Mother to become a reliable and providing parent is contrary to Pennsylvania law. It

---

[5] While Mother sent a letter and a card, as noted above, these were after the filing of the termination petition. Accordingly, we will not consider these post-petition actions. *Z.P.*, 994 A.2d at 1121.

is well-settled that "a child's life 'simply cannot be put on hold in the hope that [she] will summon the ability to handle the responsibilities of parenting.'" **In re Z.S.W.**, 946 A.2d 726, 732 (Pa. Super. 2008) (citation omitted); **see also K.Z.S.**, 946 A.2d at 759 ("Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." (citation omitted)).

Accordingly, the trial court's determination that Mother's parental rights would best serve the Child's needs and welfare, and that termination was in Child's best interests is supported by clear and convincing evidence. **See Z.P.**, 994 A.2d at 1126-27; **K.Z.S.**, 946 A.2d at 763-64.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2018

- 13 -